IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 10-cv-01309-LTB

RANDY BRAKE,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

_____

ORDER
_____

      Plaintiff, Randy Brake, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and his application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral arguments will not materially aid in the resolution of this appeal. After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the SSA Commissioner's final order.

**I.  STATEMENT OF THE CASE**

      Plaintiff seeks judicial review of the SSA Commissioner's decision denying his July 2007 applications for disability insurance benefits and supplemental security income. [Administrative Record ("AR") 120-28]  After an evidentiary hearing in June 2009, an Administrative Law Judge ("ALJ") issued a written ruling on July 28, 2009, denying Plaintiff's applications on the basis that he was not disabled because Plaintiff had the residual functional

capacity (RFC) to perform other work existing in significant numbers in the national economy (Step Five). [AR 21]  The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination on April 6, 2010, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1-4]  Plaintiff timely filed his complaint with this court seeking review of the Commissioner's decision.

## II.  FACTS

Plaintiff was born in May of 1965, and was less than 49 years old on the date of the ALJ's decision. [AR 29, 120, 124]  Plaintiff has a high school education, and has worked as a painter and as a food service driver (pizza delivery person). [AR 21, 53, 142]  Plaintiff alleges that he became disabled on November 3, 2006, and was unable to work due to a neck and back impairment. [AR 120, 124, 135]

The medical records reveal that Plaintiff was in a motor vehicle accident on November 3, 2006. [AR 330-31, 322]  Plaintiff subsequently went to the emergency room and saw Dr. Chad Davis for his worsening headache related to the accident, on November 6, 2006. [AR 309] During a follow-up visit on November 12, 2006, Dr. Davis noted that Plaintiff's MRI of his brain revealed no abnormality, but that an MRI of his cervical spine revealed degenerative disc disease in the form of: mild neural foraminal stenosis at C2-3;  bulging discs causing light pressure on his spinal cord and nerve roots at C3-4 and C5-6; and moderate stenosis of the neural foramen at C6-7. [AR 320]   Physical examination revealed no neurological changes or weakness, and little sensory deficits. [AR 309, 312]

On June 13, 2007, Plaintiff was admitted to the hospital complaining of increased pain in his neck, right upper extremity and right lower extremity, as well a leg numbness. [AR 263]

MRIs of Plaintiff's lumbar and cervical spine revealed mild to severe foraminal stenosis. [AR 263]  The MRI of his lumbar spine revealed degenerative changes at L1-L2, and an osteophyte (boney outgrowth) leading to neural foraminal encroachment at L5-S1. [AR 229]  The MRI of his cervical spine revealed degenerative changes, most severe at C3-4. [AR 297, 236]  Following the MRIs, Plaintiff saw Sanjay Misra M.D. for a neurological consultation. [AR 263, 268]  Upon examination, Dr. Misra's impression was chronic muscular cervical pain, degenerative disc disease, and lumbar pain.  [AR 269] As recommended by Dr. Misra, and his family care physician, Plaintiff received conservative treatment in the form of a cervical steroid injection, which provided "marked" relief. [AR 269, 263, 286]

Following another steroid injection on June 26, 2007, Plaintiff was admitted to the hospital the next day for chronic neck and back pain with progressive symptoms.  [AR 242, 259]  Plaintiff's cervical MRI demonstrated the presence of multilevel degenerative changes with disk protrusion but without stenosis, but revealed no interval change or additional abnormalities from the November 12, 2006 MRI. [AR 232, 47]  MRIs of the thoracic and lumbar spine also reveled multilevel disk degeneration, but without obvious compromise of the central canal. [AR 471]  Dr. Misra's subsequent examination resulted in an impression of investigation for chronic cervical and lumbar pain. [AR 240]  Dr. Misra's conclusion was that there was no imaging changes or clear neurologic pattern established, and that "the examination findings cannot be in their entirety ascribed to the findings of the cervical disease."  [AR 241]

Approximately four and one-half months later, on October 15, 2007, Plaintiff was found lying on the concrete outside of the emergency room. [AR 340]  Plaintiff complained of chest pain and indicated that he was not strong enough to get to the door.  The ER physician, Dr.

Matthew Chase, M.D., opined that it was unlikely Plaintiff was having a cardiac event based on testing. Dr. Chase noted that Plaintiff was not complaining of back pain, and that his responses to neurological and physical testing were inconsistent. [AR 340-41]

In March of 2008, Plaintiff began seeing Dr. Donna Fisher, M.D., for his chronic back and neck pain. [AR 462-63] Dr. Fisher provided pain management to Plaintiff from March 2008 through November of 2008 via prescription medication. [AR 449-463]

During this time, on April 16, 2008, Plaintiff saw Dr. Misra. [AR 470-71] Dr. Misra's physical examination reveal stable stance and gait, and that his reflexes were symmetric in all limbs and hypoactive. [ AR 470] Motor examination of the upper and lower extremities was normal bilaterally, although Plaintiff reported decreased range of motion of the cervical and lumbar spine. [AR 471] Dr. Misra also noted that Plaintiff's most recent MRIs demonstrated the presence of multilevel disk degeneration, but without obvious compromise of the central canal. [AR 471] Dr. Misra advised Plaintiff that "mobility" would be the best option in terms of managing his arthritis and providing overall symmetric relief. [AR 471] Following this exam, Dr. Misra reported to Dr. Fisher that it was his opinion that Plaintiff's symptoms were disproportionate to the MRI results and clinical findings. [AR 455] Dr. Misra also opined that he did not think surgery or a prescription for Dilaudid was warranted. [AR 455]

In May of 2008, Plaintiff again underwent MRIs of his lumbar and cervical spine. [AR 385, 387] The findings from his previous MRIs were unchanged. The cervical spine MRI revealed severe narrowing of the right neural foramen at C6-7 and a disc bulge at C3-4. [AR 387] The bulging discs at L4-5 and L5-S1 resulted in moderate foraminal stenosis. [AR 385]

Following these MRIs, Plaintiff saw a nurse practitioner in Dr. Anthony L. Ortegon's office in May of 2008. The nurse practitioner prescribed narcotics under an agreement with Plaintiff that Dr. Ortegon would be his sole prescriber for narcotics. [AR 401] In November of 2008, Plaintiff reported to Dr. Fisher that he had been discharged from Dr. Ortegon's care because he had been obtaining narcotics from both Dr. Ortegon and Dr. Fisher by filling prescriptions at different pharmacies under different birthdates. [AR 449] Consequently, Dr. Fisher also discharged him from her care for violating their narcotic pain medication agreement. [AR 449-50]

Plaintiff then began seeing Dr. Michael Barris, M.D., on March 5, 2009. [AR 487] After examination, Dr. Barris assessed Plaintiff with cervical spinal stenosis and chronic pain syndrome. [AR 488] Following a second visit on March 31, 2009, Dr. Barris filled out a form as to Plaintiff's physical capabilities on April 3, 2009. [AR 481, 489, 490, 27] Dr. Barris opined that Plaintiff could: lift and carry less than 10 pounds; stand or walk about three hours in a work day; sit for about two hours in a work day; and periodically alternate sitting, standing and walking. [AR 481] Dr. Barris also indicated that Plaintiff had non-exertional limitations related to his ability to reach, gross and fine manipulation, feel and pushing and pulling. [AR 483] In addition, he indicated that Plaintiff had some environmental restrictions in that "extremes in environment can exacerbate his symptoms." [AR 483]. Dr. Barris further opined that Plaintiff would be absent more than three times a month, on average, due to his impairments. [AR 484]

At the hearing, Plaintiff testified as to the intensity, persistence and limiting effects of his chronic pain. He initially reported the ability to sit for three to four hours and stand for two to three hours at a time, but later testified that he is not capable of sitting for more than 30 or 40

minutes at one time or standing for more than 15 to 20 minutes at one time. [AR 30, 47-8] Plaintiff also testified that he made his own lunch and assisted in preparing family meals, but had previously reported that he does not make his own meals. [AR 39, 152] At the hearing he testified that he drives around town, as well 14-16 hour drives (for 1.5 to 2 hour stretches) to Arizona, but previously reported that he does not drive except in emergency situations. [AR 30, 41-2, 153] Plaintiff also testified that he does not have an issue with narcotics, and provided inconsistent reasons for obtaining them from two different physicians. [AR 31, 449]

### III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to

preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520 (e)&(f), 416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since November 3, 20076, the alleged onset date (Step One). [AR 15] The ALJ next determined that Plaintiff had the following impairments which, in combination, are severe: chronic pain syndrome, hypertension, depression, and a history of substance abuse, in remission (Step Two). [AR 15] The ALJ further determined, however, that such impairments or combination of impairments did not meet or medically equal a listed impairment – as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 – deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 15]

As a result, the ALJ went on to find that Plaintiff has the RFC to perform sedentary work – as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) – except that: "he could lift and carry less than ten pounds frequently, and lift or carry ten pounds occasionally; stand and/or walk for a

total of two hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; perform pushing and pulling motions with his upper and lower extremities within the aforementioned weight limitations.  The claimant must avoid unprotected heights and moving machinery; must never climb ladders, ropes or scaffolds; may occasionally stoop or crouch; and must avoid bilateral overhand reaching." [AR 17]

The ALJ then determined that, given this RFC, Plaintiff was unable to perform any of his past relevant work (Step Four). [AR 21]  However, the ALJ went on to find that considering his age, education, work experience and RFC,  jobs exist in significant numbers in the national economy that Plaintiff could perform. [AR 21]  As a result, the ALJ found that the Plaintiff was not disabled, as defined by the SSA, at Step Five of the sequential process and thus the ALJ denied Plaintiff's applications for disability insurance benefits and for supplemental security income.  [AR 22]

## V.  STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).  Thus, the function of my review of the factual findings is to determine whether they "are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).

## VI.  ISSUES ON APPEAL

On appeal, Plaintiff asserts that the ALJ's RFC assessment – that he could perform sedentary work with restrictions – was not supported by sufficient evidence.  Specifically, Plaintiff maintains that when making this assessment, the ALJ erred in:  relying on the opinion of a state agency single decision maker ("SDM"); in failing to show how her RFC assessment was supported by evidence from Dr. Misra's record; and in failing to rely on functional assessments contained in the medical record when formulating Plaintiff's RFC.

The ALJ concluded that Plaintiff was able to perform sedentary work, except he can: lift and carry less than ten pounds frequently and lift or carry ten pounds occasionally; stand and/or walk for a total of two hours, and sit for a total of six hours, in an eight-hour workday; perform pushing and pulling motions with his upper and lower extremities within these weight limitations; avoid unprotected heights and moving machinery; never climb ladders, ropes or scaffolds; occasionally stoop or crouch; and must avoid bilateral "overhand reaching." [AR 17?]

As an initial matter, I note that the parties agree that "overhand" reaching in the ALJ's order appears to be a typographical error, and that the ALJ intended for Plaintiff's RFC to include avoiding bilateral *overhead* reaching, which is the term used by the ALJ at the hearing. To the extent that Plaintiff may be arguing to the contrary, I agree with the Commissioner that he has not met his burden of proving that he was prejudiced by any such error.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 735-36 (10th Cir. 2005); *St. Anthony v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002).

Plaintiff asserts that the ALJ erred in relying "primarily" on the opinion of the SDM, when assessing his RFC, and that such error requires reversal.  In support of this argument,

Plaintiff refers me to various unpublished cases which have ruled that an SDM is not a medical professional, and thus his or her opinion is worthy of no weight as a medical opinion. *See Greenfield v. Astrue,* 2010 WL 2132057 (D.Kan. 2010)(unpublished); *Sanchez v. Astrue,* 2009 WL 4810696 (D.Colo. 2009)(unpublished); *Velasquez v. Astrue,* 2008 WL 791950 (D.Colo. 2008)(unpublished).

I agree with the Commissioner, however, that it is evident in the ALJ's order that she did not rely upon the opinion of the SDM when assessing Plaintiff's RFC. After an extensive discussion of the evidence related to her RFC determination, the ALJ's order indicates at the end of its rationale only that the assessed RFC "is supported by the State [A]gency Physical Residual Functional Capacity Assessment, which is consistent with the medical evidence, when considered as a whole." [AR 20]   This is the entirety of the analysis in the ALJ's order as to the SDM assessment. The order does not indicate that the SDM was a physician, or that the SDM's opinion was medially-based or entitled to any weight. The ALJ did not adopt the SDM's RFC assessment, which was less restrictive than the ALJ's RFC assessment. [AR 332]  As such, I disagree with Plaintiff's claim that the ALJ relied upon, or gave any significant weight to, the SDM's assessment.

Plaintiff also asserts that the ALJ erred in finding that the medical evidence and opinions of Dr. Misra, as his treating neurologist, supported the ALJ's RFC assessment. The ALJ's order relates Plaintiff's history of treatment for his neck and back pain through Dr. Misra as follows:

> the claimant's treatment has been conservative, and he has found relief through a combination of prescription and over-the-counter medications, along with two cervical epidural steroid injections. The claimant noted marked relief after the first injection. He experienced some increased pain following the second steroid injection and was hospitalized pending a neurological consultation with Sanjay

> Misra, M.D. Magnetic resonance imaging (MRI) results demonstrated that presence of multilevel degenerative disk disease with eccentric disk degeneration herniation, with some neuroformalinal compromise. However, compared with an earlier image, little deterioration was evidence. Dr. Misra discussed surgical options but recommended conservative treatment. Dr. Misra noted that the examination findings could not be entirely ascribed to the findings of the cervical disease. . . . [s]ubsequent treatment has been conservative. Moreover, the records show that Dr. Misra has consistently recommended conservative treatment from his first consultation with the claimant in June 2006 to his recommendation in April 2008. [AR 18-19]

In discussing Dr. Fisher's records, the ALJ indicated that "[a]ccording to Dr. Fisher, Dr. Misra opined that the claimant's symptoms were disproportionate to his clinical findings and MRI results." [AR 19] In finding that various examining medical sources recorded Plaintiff's ability to ambulate and move effectively – supporting the ALJ's RFC and credibility assessments – the ALJ relied in part upon records from Dr. Misra relating to Plaintiff ability to rise from a bed to a walking position and walk without any deficit to the lower limbs. [AR 19] The ALJ then noted that she "gives great weight to Dr. Misra's opinion, as he had the opportunity to observe the claimant's situation over approximately one year and he is a neurology specialist." [AR 19] In addition, the ALJ noted that Dr. Misra is Plaintiff's "treating neurologist" and is a specialist and, as such, she "gives his treatment notes and opinion more weight than the nurse practitioner or general practitioner." [AR 20]

Plaintiff argues that the ALJ erred in evaluating the medical evidence related to Dr. Misra. Plaintiff first argues that Dr. Misra's opinion that Plaintiff's symptoms were disproportionate to his clinical findings and MRI results – as expressed to Dr. Fisher – constitutes unreliable hearsay evidence. Plaintiff acknowledges that an ALJ may consider hearsay evidence in a Social Security hearing. *See* 42 U.S.C. § 405(b)(1)("[e]vidence may be

11

received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure"). He maintains, however, that in this case Dr. Misra's opinion is unreliable because the context of the conversation between Dr. Misra and Dr. Fisher is not clear; it is not clear what clinical findings Dr. Misra is relying on; there is no indication to what degree Dr. Misra believes Plaintiff is exaggerating his symptoms; and Dr. Misra continued to treat Plaintiff for his back pain. Plaintiff also agues that Dr. Misra's observations related to Plaintiff's ability to ambulate cannot support the ALJ's RFC assessment because the ALJ failed to discuss Dr. Misra's other observations that would support his claim of disabling back pain. Finally, Plaintiff argues that the records from Dr. Misra fail to support a function-by-function basis that would allow the ALJ to conclude that Plaintiff was capable of performing sedentary work with some limitations.

I disagree that the ALJ failed to demonstrate that the medical evidence from Dr. Misra supported the her RFC determination. The ALJ's order provided a detailed discussion of the relationship between the RFC she assessed, and the evidence as it related to Dr. Misra's findings and opinion as Plaintiff's treating neurologist. Plaintiff's claim of error relates to the ALJ's assessment of Dr. Misra's records and opinion and, as such, serves to question the weight the ALJ gave that evidence. My function is not to re-weigh the evidence. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir.2006). And this is not the case in which substantial evidence was improperly disregarded, nor is it a case in which isolated bits of evidence are culled from the record in order to support a preconceived conclusion. *Himmelreich v. Barnhart*, 299 F.Supp.2d 1164, 1167 (D.Colo. 2004).

Finally, Plaintiff argues that the ALJ failed to cite competent evidence, beyond her own speculation, that would support her RFC assessment. Because the ALJ disregarded Dr. Barris' opinion (including his opinion as to Plaintiff's work limitations) and determined that Plaintiff's testimony regarding his limitations was not credible, and because Dr. Misra and Dr. Fisher did not provide opinions as to his specific limitations, Plaintiff maintains that the ALJ improperly relied her own lay opinion to determine Plaintiff's functional limitations in order to assess his RFC.

There is no requirement that the ALJ adopt limitations of a medical professional in order to make an ultimate RFC determination. Rather, it is the ALJ's responsibility to assess Plaintiff's RFC by weighing all of the evidence in the record. *See Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir. 1990)(when determining the claimant's credibility and assessing his RFC the ALJ is required to consider all of the medical and non-medical evidence); *see also* 20 C.F.R. §§ 404.1546, 416.946.

Here, the record is clear that the ALJ considered and weighed the medical evidence, as well as the non-medical evidence – such as Plaintiff's daily activities and his credibility as related to his misuse of pain medications – to assess his functional limitations and his resulting RFC. I disagree with Plaintiff that the ALJ employed her own lay medical opinion over the medical opinions contained in the record. *See Kemp v. Bowen,* 816 F.2d 1469, 1476 (10th Cir.1987)(holding that an ALJ "can not interpose his own 'medical expertise' over that of a physician"). In conclusion, I find no error by the ALJ in weighing the medical and non-medial evidence in the record to assess Plaintiff's RFC and I conclude that the RFC assessment here is supported by sufficient evidence.

Accordingly, IT IS THEREFORE ORDERED that the Commissioner's decision is AFFIRMED.

Dated: June   24  , 2011 in Denver, Colorado.

                                                  BY THE COURT:

                                                    s/Lewis T. Babcock  
                                                  LEWIS T. BABCOCK, JUDGE